## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## AT FRANKFORT
## CIVIL ACTION NO. 3:04-CV-64-JMH

WILLIAM WAFORD                                               PETITIONER,

V.

CAROLYN MUDD, WARDEN                                    RESPONDENT.


### REPORT AND RECOMMENDATION

Petitioner William Waford has filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. §2254.  The Respondent filed a response and motion to dismiss or in the alternative, for summary judgment, to which the petitioner filed a reply/traverse. Because the respondent had failed to fully comply with Rule 5 of the Rules Governing Habeas Corpus Cases Under 2254 by filing the entire state court record or a statement indicating what transcripts were available, the court ordered the respondent to file missing pages, videotapes and/or transcripts.  The respondent complied with the court's order on May 18, 2005.[1]  Pursuant to local practice, this matter is now before the

_____

[1]Although the respondent substantially complied with the court's order by filing the missing pages described by the court as well as eight missing videotapes, the respondent's compliance was minimalistic.  The respondent failed to comply with the specific order of this court requiring the respondent to file any additional "*transcribed* portions of the video/audiotaped portions of the state court record ...*or a statement indicating that none exist*."  (Emphasis added).  Instead, the respondent merely stated - without reference to *transcriptions*- that it had filed "copies of all video portions of the state court record and has no knowledge of any additional audio or video portions of such record." The eight videotapes filed by the respondent were very poorly labeled, with no indication of what witnesses appeared when on what tapes, or even- with respect to two tapes- whether they contained pretrial, trial, or post-trial proceedings and/or the dates of those proceedings.  The respondent's somewhat lackadaisical compliance required the expenditure of significant judicial resources to clarify what portions of the state court record had been produced.

undersigned for initial consideration and a Report and Recommendation.  28 U.S.C. § 636(b).

### I. FACTS AND PROCEDURAL BACKGROUND

The petitioner was indicted on July 30, 1997 by the Franklin County Grand Jury for capital murder and armed robbery, concerning the shooting death of Wilbur Brown in the parking lot of Indian Hills Apartments four days earlier.  Petitioner immediately retained an attorney, William Patrick, who had previously represented the petitioner in other matters.  Two months later, the state prosecutor filed a notice of intent to seek a sentence of life imprisonment, without possibility of parole or probation, for twenty-five years.  Following a continuance, a five-day trial began on January 26, 1998.  Thirty-nine witnesses testified for the prosecution, and three witnesses (including the defendant) testified for the defense.  Memorandum in Support of Petition for Writ of Habeas Corpus, hereinafter DE #2, at p. 2.

Defense counsel successfully moved for a directed verdict of acquittal on the robbery charge.  Ultimately, the petitioner was found not guilty of murder, but was convicted on the lesser-included-offense of first-degree manslaughter.  At the subsequent penalty phase hearing, defense counsel called no witnesses.  DE #2 at. 3.  Permitted a statutory range of ten to twenty years, the jury imposed the maximum statutory penalty of twenty years.

The facts underlying petitioner's conviction were set forth by the Kentucky Supreme Court in its opinion affirming that conviction:

> On the night of July 26, 1997, Wilbur Brown was shot in a Frankfort apartment complex parking lot.  Appellant's girlfriend, Starla Huff, witnessed the shooting and testified as such.  However, her

2

> testimony at trial differed substantially from her testimony before the Grand Jury, in which she had stated that she did not see Appellant shoot Brown and that Appellant could not have killed Brown.
>
> Several tenants of the apartment complex heard and witnessed parts of the incident. Three tenants heard arguing before the gunshot, and two of them recalled seeing two men and two women arguing in the parking lot. Five tenants recalled that after the gunshot they saw a man on the ground, another man leaning over him (Appellant, by his own admission), and a brunette female (later identified as Huff). Three tenants saw Appellant drive away from the scene.
>
> Though the weapon was never found, physical evidence also linked appellant to the murder. A search of his apartment produced live ammunition that matched the casing found at the scene and the bullet found in the victim's body.
>
> Appellant testified on his own behalf, claiming that Brown was shot by two African-American males after a heated argument. He stated that he could not understand how all of the other witnesses failed to notice the two assailants. He admitted fleeing the scene, both out of fear for his own life and to avoid a police search.
>
> The jury convicted Appellant and final judgment was entered on April 1, 1999. Nineteen days later, Appellant filed a motion for a new trial based upon ... an affidavit signed by Huff, recanting her trial testimony.

Memorandum in Support of Answer, Response and Return, Motion to Dismiss or

Alternatively Motion for Summary Judgment, hereinafter DE #15, Appendix at p. 47.

At the evidentiary hearing on the motion, Huff recanted her affidavit, and the trial

court denied the motion for a new trial. The Kentucky Supreme Court affirmed the

denial of that motion and the conviction on September 28, 2000. In so doing, the

Kentucky court noted "at the outset that the only issue properly before" the court was

whether the motion for a new trial was properly denied. *Id.,* App. at 49. Although

Waford attempted to raise three additional grounds in his appeal, the Kentucky Supreme

Court explicitly held that petitioner/appellant was procedurally barred from raising those

issues because his "appeal was filed too late for review of any claim of error except the

denial of the motion for a new trial."  Alternatively, the Kentucky Supreme Court

examined the other issues and found them to be "without merit."  *Id.*

On October 11, 2000, petitioner filed a *pro se* post-conviction motion in state

court, pursuant to Ky. RCr 11.42, alleging ineffective assistance of counsel.  In his state

post-conviction motion, petitioner claimed trial counsel erred by permitting the state to

obtain a continuance, and by failing to interview witnesses, to investigate another

suspect, or to object properly during trial.  Petitioner argued that counsel's cumulative

errors also required the reversal of his conviction.   Counsel was appointed to represent

the defendant and an evidentiary hearing was held on August 6, 2001.  The trial court

denied defendant's RCr 11.42 motion on March 13, 2002.  Counsel was thereafter

permitted to withdraw, and petitioner proceeded *pro se* on appeal.  The Kentucky Court

of Appeals affirmed on July 18, 2003 and the Kentucky Supreme Court denied

discretionary review on August 18, 2004.  Petitioner promptly filed this *pro se* federal

petition on September 7, 2004.[2]

Petitioner presents the following eight grounds for relief in this federal petition

for a writ of habeas corpus: 1) the Kentucky courts erred first in denying his motion for

new trial due to the alleged perjury of a key witness, and subsequently in denying his Ky

RCr. 11.42 motion based on the ineffectiveness of trial counsel relating to the same issue;

2) Counsel was constitutionally deficient for failing to pursue the defense that a black

man shot the victim; 3) Counsel was ineffective for failing to interview vital witnesses;

_____

[2]Although petitioner proceeds *pro se* in this federal proceeding, his pleadings
include proper citation to relevant case law and the attachment of numerous relevant
exhibits.  Petitioner's pleadings are extensive; his petition alone spans more than 70
typewritten pages, excluding exhibits.

4

4) Counsel was ineffective for failure to interview mitigating witnesses; 5)

Defendant/Petitioner's right of confrontation was denied  when the trial court prevented

counsel from questioning a witness; 6) Counsel was ineffective for failing to object to the

hearsay testimony of Cleo Waford; 7) Counsel was ineffective for allowing the state to

obtain a continuance; and 8) Cumulative errors denied petitioner a fair trial.

The first issue presented by petitioner previously was raised both in his direct

appeal and again, in the context of an ineffective assistance of counsel claim, in

petitioner's RCr 11.42 motion.  Petitioner's second, third, fourth, sixth and seventh

grounds were raised in petitioner's RCr 11.42 motion.  Petitioner's fifth ground was

raised on direct appeal.  Petitioner's eighth claim of "cumulative errors" was presented

both on direct appeal and in his RCr 11.42 motion.  Therefore, petitioner has satisfied the

prerequisite of exhausting his state court remedies prior to presenting his claims in this

court.

## II.  ANALYSIS

### A.  Standard of Review

The Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. §2254, effective

April 24, 1996, applies to all habeas cases and requires "heightened respect" for legal and

factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134

(6th Cir. 1998).  Relief may be granted on a federal constitutional claim decided by a

state court only if the state court decision is "contrary to, or involved an unreasonable

application of clearly established federal law, as determined by the Supreme Court of the

United States." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

All findings of fact by the state court are presumed correct and only "clear and convincing evidence" may alter the state court's determinations.  *Mitchell v. Mason*, 325 F.3d 732, 737 (6th Cir. 2003); 28 U.S.C. §2254(e)(1).   Legal conclusions made by state courts are also given substantial deference under the AEDPA.  Section 2254 (d) provides: an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of the state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  As the Supreme Court recently reiterated: "A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result."  *Brown v. Payton,* 125 S. Ct.1432, 1438 (2005); *see also Williams v. Taylor*, 529 U.S. at 405-406.

Under this standard of review, none of the eight claims presented by petitioner in his federal petition are sufficient to provide him with relief under 28 U.S.C. §2254.   In addition, one of the eight claims is barred from federal review due to petitioner's procedural default in state court.

### B.  Right of Confrontation - A Procedurally Defaulted Issue

Petitioner's fifth claim in his federal petition concerns the alleged denial of his right to confrontation during the cross-examination of one witness: namely, the victim's

6

brother, Gary Brown.  In petitioner's combined direct appeal of his conviction and of the

denial of his motion for new trial, petitioner presented the same claim, along with several

others not presented in this federal petition.   The Kentucky Supreme Court held that the

right of confrontation claim had not been preserved for appellate review.  Petitioner now

presents the claim anew to this federal court.

Although the Respondent has not raised the issue of procedural default, it is

appropriate for this court to consider it *sua sponte* in light of the Kentucky Supreme

Court's application of the doctrine.  Procedural default bars federal habeas corpus relief

when the last state court rendering a decision in the case clearly states that its decision

rests on a state procedural bar.   *Coleman v, Thompson,* 501 U.S. 722, 750 (1991).  A

federal court is precluded from reviewing the same claim unless the petitioner can show

cause for the default and actual prejudice from the state court's failure to consider the

claim. *See Keeney v. Tamayo-Reyes,* 504 U.S. 1, 6 (1992); *Maupin v. Smith,* 785 F.2d

135, 138 (6th Cir. 1986).

Petitioner argues as he did before the state court that his right of confrontation

was abridged.  The Kentucky Supreme Court noted that the claim was reviewable only

for "palpable error" in light of trial counsel's failure to preserve the issue:

> On cross-examination of the victim's brother, defense counsel attempted
> to inquire as to why the brother threatened another witness in the foyer of
> the courthouse on the day before his testimony.  The trial judge sustained
> the prosecutor's objection, and defense counsel resumed his cross-
> examination without further pursuing the matter by way of an avowal.
>
> When "an objection to a question propounded to a witness is sustained,"
> the issue can only be preserved for appellate review through an avowal.
> Rcr 9.52.  The witness must offer his testimony outside the presence of the
> jury and the judge must then state his reasons for excluding the evidence.
> Rcr 9.52; see also KRE 103(a)(2); Commonwealth v. Ferrell, Ky., 17

7

> S.W.3d 520 (2000).  Absent an avowal, an appellate court has no basis
> upon which to determine error. . ..  No avowal was offered on this issue.
>
> Since this issue has not been properly preserved, it can only be reviewed
> under Rcr 10.26 for palpable error.  After reviewing the testimony of the
> victim's brother, we find no palpable error in excluding a question
> apparently designed to impeach credibility through evidence of specific
> bad acts rather than through bias or character evidence. . ..

DE #15, App. at 51-52 (citations omitted).  Because the Kentucky court held that the

issue was procedurally barred from review except for "palpable error," this court need

not further review the claim as it is barred by the state court's application of procedural

default and petitioner has failed to make any showing of cause and prejudice.

Alternatively, the state court's reasoning is sound to the extent that the court

reviewed the claim on the merits.  The state court's decision is neither contrary to nor an

unreasonable application of clearly established federal law, nor is it based on an

unreasonable determination of the facts.

Gary Brown testified for the Commonwealth that his brother, the victim, had a

large amount of drugs and money in his possession on the day he was killed.  A directed

verdict in petitioner's favor was subsequently entered on the robbery charge, thereby

rendering most of Mr. Brown's testimony irrelevant to the jury.  Nevertheless, petitioner

asserts that on the second day of trial, Gary Brown approached another Commonwealth

witness, Julia Corn, and threatened her.  Corn did not testify concerning the threat on

direct, but responded affirmatively on cross-examination by defense counsel when asked

if she'd been threatened.  She testified specifically that an unidentified male threatened to

"knock my teeth down my throat" if she didn't keep her "mouth shut."  Trial Tape 2,

January 27, 1998; 11:42- 11:43.   Petitioner admits that his trial attorney questioned her "extensively." *Id.* and DE #2, at p. 50.

Despite counsel's extensive questioning of Ms. Corn, petitioner contends that his right of confrontation was abridged during cross-examination of Gary Brown regarding the threat.  Defense counsel inquired of Mr. Brown: "Can you tell us why you threatened a witness in here yesterday?" The trial court sustained the prosecutor's objection to the question as involving a matter outside the courtroom, and instructed the jury to disregard the question.

Petitioner speculates that permitting further inquiry of Gary Brown could have demonstrated that Brown threatened Corn because he did not want the jury to hear her testimony about two black men chasing the victim through the parking lot before he was killed.  Petitioner theorizes that if Brown wanted information about two black pursuers to be suppressed, that would have bolstered petitioner's defense that unknown black men were the true assailants.

A central problem with petitioner's theory is that his assertion that Corn testified about the existence of black men is false.  A review of the trial tape verifies that she did not so testify, and in fact denied the existence of any possible perpetrator other than the petitioner.  Corn's testimony was entirely adverse to petitioner.  She testified that she saw him arguing or pointing his finger at the victim laying on the ground, prior to fleeing the scene.  Trial Tape 2, 11:38:30 - 11:42:00.  Petitioner also argues that the court's evidentiary ruling left the mistaken impression that the defendant and/or his friends and family members were responsible for the threat; however, it was defense counsel who presented the existence of the threat to the jury.

9

Only when a state court's evidentiary ruling is so egregious that it results in a denial of fundamental fairness does it constitute a violation of due process which would entitle the petitioner to habeas relief. *Bugh v. Mitchell*, 329 F.3d 496 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003)(*citing Coleman v. Mitchell*, 244 F.3d at 533 (6th Cir. 2001)). In this case, the alleged error not only does not rise to the level of Constitutional error, but does not appear to have been error at all. As petitioner acknowledges, the issue was clearly a collateral one. DE #2, at p. 54.

The Kentucky Supreme Court found no error under state law "in excluding a question [of Brown] apparently designed to impeach credibility through evidence of specific bad acts rather than through bias or character evidence." DE #15, App. at 52. Application of the state law prohibition of this type of impeachment evidence is not unconstitutional. Even if the court abused its wide discretion to impose limits on cross-examination, there is no constitutional error unless a reasonable jury might have received a significantly different impression of the witness's credibility had the cross-examination been permitted. On the facts of this case, Gary Brown was a peripheral witness who knew little about the events surrounding his brother's death. His primary testimony concerned the robbery, upon which a directed verdict was ultimately entered in defendant/petitioner's favor. Therefore, the state court's rulings limiting the cross-examination of Gary Brown did not rise to the level of constitutional error.

### C.  Denial of New Trial Motion: Alleged Perjury

Petitioner's first and central claim in this federal petition concerns allegations that a key witness committed perjury. The Kentucky trial court held an evidentiary hearing on petitioner's motion for a new trial which presented the same claim in the context of a

post-trial affidavit filed by eyewitness Starla Huff.  Nineteen days after final judgment

was entered, Ms. Huff recanted her trial testimony and stated that she had not actually

witnessed the petitioner shooting the victim.  Ms. Huff claimed to have told the truth at

the Grand Jury hearing, and claimed to have lied at trial "because of threats by the lead

detective that he would press criminal charges against her if she did not testify that she

saw Appellant shoot Brown." *Id.,* App. at 48.

      The Kentucky courts' factual findings were summarized by the Kentucky

Supreme Court:

> At the evidentiary hearing on the motion, Huff recanted her affidavit,
> stating that she had only signed the affidavit due to pressure from
> Appellant's ex-wife and relatives.  She claimed that she did not draft the
> affidavit and that it was handed to her on the steps of the Anderson
> County Courthouse.  According to Huff, the entire issue resulted from a
> letter to her from Appellant stating that she could not be charged with
> perjury for signing the affidavit and that Appellant would help clear her of
> her drug charges if she could help Appellant get out of jail.  Based on this
> evidence, the motion was denied.

*Id.* at 48-49.

      The Kentucky Supreme Court reviewed the evidence presented by the defendant

in support of the motion for a new trial, and contrasted it with a state case in which a

similar motion for new trial had been granted - but on distinguishable facts.

> The facts in <u>Mullins</u> differ substantially from the facts of this case.  Here,
> the allegedly recanting witness denied under oath that her trial testimony
> was false.  Unlike in <u>Mullins</u>, Huff instead recanted her post-trial
> affidavit.  Nor has the Commonwealth admitted as in <u>Mullins</u> that a
> miscarriage of justice would result absent a new trial.  Additionally, the
> letter from Appellant to Huff supports Huff's claim that she was pressured
> to sign the affidavit.

App. at 50.  The Kentucky court also quoted from an earlier Kentucky case which recited special rules to be applied to recanted testimony, including the fact that "recanting testimony is viewed with suspicion."   *Id.* (citation omitted).

Under the AEDPA, the state court's factual findings are presumed to be correct. Therefore, in the absence of clear and convincing evidence to the contrary, this court will defer to the state trial court's factual conclusions that Ms. Huff was telling the truth at the evidentiary hearing on petitioner's motion for a new trial, and that Huff's post-trial affidavit in which she recanted her trial testimony was false.

Petitioner first contends that the state courts' factual rulings are unreasonable in light of the evidence presented during state post-conviction proceedings.  Petitioner notes that the trial court determined only that Ms. Huff was telling the truth "for the most part," and argues that the court erred in concluding that Huff told the truth concerning her recantation.  *See* Tape of June 12, 1998 hearing, 15:34:00, et seq.[3]   However, the trial court's determination that Ms. Huff was telling the truth was not equivocal concerning her veracity at trial.  The court stated that Ms. Huff "told the truth about the essential elements" of what happened.  *Id.*  The court noted uncontradicted testimony that Ms. Huff was drunk when she allegedly told a contrary version to defense witnesses at a time

---

[3]This court has reviewed the videotaped recording of that hearing, which appears on a videotape not identified except by the caption "Franklin Cir. Ct.  Div. II 97-CR-98, Com. vs. William "Billy" Waford 02-CA-725 OAG copy. "  This court has not reviewed that tape in its entirety, but the same videotape appears to contain pretrial proceedings dated August 6, 1997, August 28, 1997, October 31, 1997, November 21, 1997, and post-trial proceedings dated January 9, 1998, January 13, 1998, April 30, 1998, and June 12, 1998.  For the benefit of any reviewing court, the June 12, 1998 hearing on the motion for a new trial occurs approximately two-thirds of the way through the length of the videotape.

she was not under oath, and explicitly found those defense witnesses to be "not credible."

*Id.* The court's conclusions were supported by the introduction of a letter from petitioner

to Ms. Huff (hand-delivered to Huff by petitioner's ex-wife), urging Huff that she could

not be charged with perjury or contempt of court for recanting her trial testimony in his

favor, that she would never have to testify against him again, and that he and his relatives

would help her in exchange for her favorable (affidavit) testimony.[4]

      Petitioner urges this court to reach a conclusion contrary to that reached by the

state court, and to find that Huff's affidavit (recanting her trial testimony) was truthful.

As support, petitioner cites to Huff's unsworn statements immediately following her

arrest and as well as sworn testimony before the Grand Jury denying that she had

witnessed the shooting.  Petitioner also cites to testimony from other witnesses at the

hearing on the motion for a new trial impugning Huff's trial testimony and supporting

her post-trial affidavit. Petitioner implies that the dismissal of drug charges initially

brought against Huff two months after the evidentiary hearing on petitioner's motion for

a new trial, as well as the lack of prosecution of Huff's initial failure to comply with a

subpoena issued for her to appear at trial, was in response to Huff's testimony favorable

to the prosecution.   Petitioner argues that Huff's testimony that she had made no "deals"

with the prosecution was false.

---

[4]Ms. Huff read the contents of the letter into the record on the videotape reviewed
by this court.  The trial court specifically instructed counsel to ensure that the letter,
which it described as "disturbing," became part of the state court record for the benefit of
any future parole board.  Unfortunately, the state court record filed by the Attorney
General does not contain a written copy of the letter.

Virtually all of the evidence to which petitioner now cites was presented to the Kentucky courts during the evidentiary hearing on petitioner's motion for a new trial held on June 12, 1998. Unlike reviewing courts including this one, the Kentucky trial court had the opportunity to observe first-hand the demeanor and credibility of all witnesses including Ms Huff. The only evidence not presented during that evidentiary hearing concerns events which occurred subsequent to the hearing, such as the dismissal of drug charges against Ms. Huff. However, the dismissal of drug charges against Ms. Huff was presumably known to the Kentucky Supreme Court prior to the issuance of its September 28, 2000 opinion affirming the denial of the motion for a new trial. The same evidence was known to the Kentucky courts during the entire pendency of the RCr 11.42 proceedings. In fact, Huff testified at the RCr 11.42 hearing that she believed the drug charges had been dismissed only one or two weeks prior to that hearing.

Another piece of evidence which arose after the hearing on petitioner's motion for a new trial concerns Starla Huff's testimony at the RCr 11.42 hearing. Petitioner contends that Huff testified at that hearing - in conformity with her post-trial affidavit- that a detective had warned her that she would be prosecuted for perjury if she did not testify against petitioner at trial. Petitioner claims that such consistency in Huff's testimony is further evidence of an undisclosed "deal" with the prosecution to testify falsely at trial.

All of Starla Huff's testimony was known and obvious to the Kentucky courts throughout the pendency of the RCr 11.42 proceedings. Yet those courts consistently rejected the factual conclusions now urged by petitioner. Having reviewed the videotape

14

of Ms. Huff's testimony at the RCr 11.42 hearing in its entirety, I find no fault with the

Kentucky courts' factual and legal conclusions concerning Ms. Huff's testimony.

In fact, based on the videotape, I disagree strongly with the petitioner's assertion

that Ms. Huff's RCr 11.42 testimony "precisely matches" her post-trial affidavit

recanting her trial testimony.  *See* DE #2 at 11 (emphasis original).  On the contrary, Ms.

Huff testified at the RCr 11.42 hearing *consistently with her trial testimony*.  Contrary to

the affidavit, Ms. Huff testified that she told Detective Mike Johnson and Attorney

Morris Burton (the prosecutor) just minutes before trial for the very first time that she

had lied before the Grand Jury and that she actually did see the defendant shoot the

victim.  It was only after she admitted to the prosecutor and detective Johnson that she'd

seen the petitioner shoot the victim and had lied to the Grand Jury that both the

prosecutor and Detective Johnson warned Huff that she could be charged with perjury if

she did not tell the truth on the witness stand at trial.  Tape of June 12 hearing, 10:32:00.

On cross-examination, Huff reiterated that Detective Johnson had threatened to

prosecute her for perjury if she did not tell the truth only *after* she disclosed to him that

she had earlier lied before the Grand Jury, and that she actually had seen petitioner shoot

the victim.  *Id.*, 10:40:01.  When petitioner's attorney attempted to cross-examine Ms.

Huff on whether Detective Johnson might have made threats to her about prosecuting her

for perjury during the car ride to the courthouse, Ms. Huff denied that any such

conversation occurred.  Consistent with Detective Johnson's testimony at the previous

hearing on the motion for a new trial, Huff testified that he only told her to tell the truth

during the car ride.  When counsel pressed her, Ms. Huff simply reiterated that Detective

Johnson and she had had "no conversation" during the transport to the courthouse, and that "he didn't say hardly two words to me." *Id.* at 10:43:40.

In short, reviewing the record as a whole, I conclude that petitioner has failed to present "clear and convincing" evidence sufficient to overcome the presumption of correctness to which the state court's factual findings are entitled.  I not only defer to but fully agree with those findings, including the conclusion that Ms. Huff testified truthfully at trial and that her post-trial recantation was false.

As an alternative to his argument that the state court's factual findings were erroneous, petitioner argues that the state court erred in overruling the motion for a new trial because its decision was contrary to clearly established federal law.  The United States Supreme Court has determined that recantation testimony is viewed with "great suspicion." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984).

> It [recantation testimony] upsets society's interest in the finality of
> convictions, is very often unreliable and given for suspect motives, and
> most often serves merely to impeach cumulative evidence rather than to
> undermine confidence in the accuracy of conviction.  For these reasons, a
> witness' recantation of trial testimony typically will justify a new trial only
> where the reviewing judge after analyzing the recantation is satisfied that
> it is true and that it will "render probable a different verdict."

*Id.* (quoting *Brown v. State,* 381 So.2d 690, 692-93 (Fla. 1980).

In affirming the trial court's analysis of Huff's alleged recantation, the Kentucky Supreme Court relied on state law which essentially mirrors federal law.

> ...recanting testimony is viewed with suspicion; mere recantation of
> testimony does not alone require the granting of a new trial; only in
> extraordinary and unusual circumstances will a new trial be granted
> because of recanting statements; such statements will form the basis for a
> new trial only when the court is satisfied of their truth; the trial judge is in
> the best position to make the determination...his rejection of the recanting
> testimony will not lightly be set aside by an appellate court . . ...

16

We find nothing in this instance to justify overturning the trial court's
refusal to grant a new trial.

DE #15, App. at 50-51 (quoting *Hensley v. Commonwealth,* Ky. 488 S.W.2d 338, 339

(1972)).  Because the state court's decision was neither contrary to clearly established

federal law nor based on an unreasonable determination of the facts, there is no basis to

overturn the state court's legal conclusions underlying the denial of petitioner's motion

for a new trial.

### D.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must prove (1) his

lawyer's performance was deficient and (2) the deficiency prejudiced the defense.

*Strickland v. Washington,* 466 U.S. 688, 687 (1984).  The first prong requires a showing

that counsel made errors so serious that counsel's performance "fell below an objective

standard of reasonableness" determined by prevailing professional norms.  *Id.* at 687-8.

The second prong, prejudice, may be shown by a "reasonable probability" that the

outcome would have been different.  *Id.* at 694.  This requires a showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, such that the result

cannot be considered to be reliable.

Under *Strickland*, a court reviewing a claim of ineffective assistance of counsel

must "indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Reasonable professional

assistance is reflected in American Bar Association Standards and general norms of

practice which offer "guides to determining what is reasonable." *Id*. at 688.

### 1. The State Courts Correctly Applied *Strickland*

Apart from petitioner's arguments concerning the state court's determination of the facts, petitioner argues that the state courts' rejection of his ineffective assistance claims is not entitled to deference because the state courts unreasonably interpreted federal law. Specifically, petitioner argues that the Kentucky Court of Appeals misinterpreted *Strickland* as requiring clear and convincing proof that "but for" counsel's errors, the resulting verdict would have been different. Under *Strickland*, a petitioner need prove only a "reasonable probability" that, but for the errors, the result would have been different.

A review of the record and the cited case law makes clear that the Kentucky courts have appropriately understood and applied *Strickland*. In its opinion rejecting petitioner's ineffective assistance of counsel claims, the Kentucky Court of Appeals repeatedly cited to the *Strickland* standard requiring proof of a "reasonable probability" that the result would have been different. Contrary to petitioner's assertion, the court did *not* erroneously convert the *Strickland* "reasonable probability" standard to one requiring "clear and convincing" evidence that the outcome would have been different.

It is true that the Court of Appeals cited *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1986); however, *Gall* itself appropriately applied *Strickland*. The only reference to any type of "convincing" standard made by the Kentucky Court of Appeals occurs within its discussion of Ky. RCr 11.42, not in a discussion of the burden of proof under *Strickland*. Quoting from another Kentucky case, the Court of Appeals explains that to be entitled to relief under RCr 11.42, a movant bears the burden "to establish convincingly that he was deprived of some substantial right which would justify the

18

extraordinary relief afforded by the post-conviction proceeding."  DE #15, App. at 179 (citation omitted).  In other words, although a petitioner must establish "convincingly" his or her entitlement to post-conviction relief under state law, a petitioner who relies on an ineffective assistance of counsel claim can make this "convincing" showing by satisfying the *Strickland* "reasonable probability" standard.  In this case, the Court of Appeals concluded that the petitioner had not satisfied *Strickland* and therefore was not entitled to RCr 11.42 relief.  The state courts' application of the standards applicable to ineffective assistance of counsel claims was not erroneous.

### 2.  Failure to Investigate Mystery Suspect

Petitioner also argues that the state courts managed to get the facts wrong on each of his ineffective assistance claims.  Petitioner's first claim of error by trial counsel concerns his attorney's failure to adequately investigate an African-American male identified by petitioner only as "Wes," who petitioner contends was the true perpetrator of the crime.  However, no other witness noticed any potential perpetrator but the petitioner at the scene.  At trial petitioner testified that the victim was shot by two African-American males after a heated argument, and that he could not understand how all the other witnesses failed to notice the two assailants.

The Kentucky Court of Appeals explained its rejection of petitioner's claim in affirming the denial of his RCr 11.42 motion as follows:

> Here, trial counsel decided to attack the weaknesses in the
> Commonwealth's case, which was based solely on circumstantial
> evidence, rather than pursue the theory propounded by appellant.  Trial
> counsel "must enjoy great discretion in trying a case, especially with
> regard to trial strategy and tactics...[and the court] must be especially
> careful not to second-guess or condemn in hindsight [his decisions]."
> *Harper v. Commonwealth,* Ky., 978 S.W.2d 311, 317 (1998).  In

> *Strickland*, the Court held that "counsel has a duty...to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, apply a heavy measure of deference to counsel's judgment." 466 U.S. at 691. Appellant has failed to overcome the strong presumption that counsel's performance was reasonable.
>
> Furthermore, it cannot be said that had counsel investigated, the outcome of the trial would have been different. The "evidence" appellant contends mandated investigation is simply not persuasive. It appears that trial counsel chose to pursue a different defense and trial strategy for good reason.

Appendix at 182-183.

The Kentucky court's reasoning is not contrary to or an unreasonable application of *Strickland,* nor does it involve an unreasonable determination of the facts. Therefore, it is entitled to deference. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. When counsel chooses not to investigate, courts must determine the reasonableness of the decision by "applying a heavy measure of deference to counsel's judgments." *Id*. The relevant inquiry is whether counsel's choices were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

After hearing testimony on the issue, the Kentucky court reasoned that counsel made a reasonable choice not to investigate the mystery suspect provided by the petitioner. The petitioner was the only witness claiming that he had seen another person commit the crime. No other witness claimed to have seen the unidentified black man - a fact which petitioner admittedly could not and cannot explain and which is virtually inexplicable considering the number of witnesses who observed critical parts of the incident. For example, two witnesses recalled seeing two men (petitioner and the victim)

20

and two women arguing in the parking lot. "Five tenants recalled that after the gun shot, they saw a man on the ground, another man leaning over him (Appellant [petitioner] by his own admission), and a brunette female (later identified as Huff)." Appendix at 48. Petitioner was observed - and testified to- fleeing from the scene.

Petitioner now argues strenuously that various other witnesses commented on hearing that a black man or black men had been at the scene and/or had shot the victim. However, the witness interviews attached by petitioner all clearly indicate that *none* of the witnesses had seen any male but petitioner arguing with the victim, the victim getting shot, and the petitioner fleeing the scene. The *only* reference by any of the witnesses to a mystery black man or men was acknowledgment that they had heard one or more of myriad rumors shortly after the shooting, including a rumor that a black man or men had been involved. It appears from the transcripts of the witness statements attached to petitioner's federal petition for writ of habeas corpus that police detectives had some suspicion that the rumors had originated with the petitioner or his sister. DE #2, Exh. 7. None of the witnesses could recall the source of the rumor, except for a witness named "HH" (apparently Hayley Hammonds). HH identified "some girl that uhm Billy used to be her ex-brother-in-law" as the person who had related a rumor to her about the involvement of black men. DE #2, Exh. 8. At trial, Ms. Hammonds testified that she could not recall who had talked about black men to her, testifying variously that she thought it may have been the detective who interviewed her, or her sister, or something she read in the newspaper. Ms. Hammonds was adamant, however, that she personally had seen no black men in the vicinity.

Petitioner contends that the state courts failed "to acknowledge or consider the multitude of evidence that many people, including the investigating officers, were discussing the possible involvement of a black man or men, months before the trial." DE #17, Petitioner's Traverse, at p. 7. Aside from the witness statements, petitioner cites to nothing which might comprise this "multitude of evidence." Petitioner also fails to identify a single one of the "many people" who might have testified to this theory.

Counsel for the petitioner testified before the state trial court at the August 6, 2001 hearing on petitioner's RCr 11.42 motion that the petitioner had agreed with counsel's pretrial decision to base petitioner's defense on the weaknesses of the Commonwealth's circumstantial evidence at trial. DE #15, App. at 161 (citing Tape, 8/6/01, 11:22:23). In his traverse/reply in support of his federal petition, petitioner disputes that testimony. Petitioner argues that a strategy to simply focus on the weaknesses of the Commonwealth's case would have been "illogical" in part because this was a capital murder trial. Petitioner argues that trial counsel created the "weakness of the case" strategy only after the trial, when his competence was questioned at the RCr 11.42 hearing. Petitioner claims that during opening and closing statements[5] and "throughout the trial" counsel focused "on the fact that a black man named Wes was guilty of the murder," soliciting testimony from petitioner and other witnesses to that effect.

---

[5]Trial Tape #5 (1-30-98) filed by Respondent does not appear to include closing arguments, but instead ends abruptly following a meeting in chambers concerning jury instructions.

The statements quoted by petitioner do not evidence counsel's "focus" on petitioner's theory that a black man named Wes was guilty of the crime, but instead reflect counsel's prudent strategy of using his client's testimony to the extent possible. Obviously, knowing his client was to testify that the crime was committed by a mystery person, and knowing there was no corroborating evidence (other than unsubstantiated hearsay and/or inadmissible rumors), a competent attorney would have done exactly as defense counsel did: reference petitioner's theory to the extent possible while concentrating his efforts on the weaknesses of the prosecution's case. Counsel's strategy was hardly "illogical" or ineffective; in fact, it resulted in petitioner being acquitted of the murder charge, obtaining a directed verdict on the robbery charge, evading the possibility of capital punishment, and being convicted only of the lesser-included-offense of first-degree manslaughter.

Again, petitioner does not accurately cite to *any* trial or direct testimony from any witness other than petitioner that a black man or black men shot the victim, and this court's review of the trial tapes reveals the existence of no such testimony. Petitioner does cite to the alleged trial testimony of three witnesses- Darrin Willard, Jennifer Eades, and Tonya Waddle. Even according to petitioner, however, those three witnesses testified only that witness Starla Huff had told them - among many other stories - that black men may have shot the victim. Petitioner does not contend that Willard, Eades, and Waddle had any direct knowledge of a mysterious black man or men shooting the victim.

Petitioner also cites to the trial testimony of Julie Corn and Hallie Hammonds; however, the cited testimony does not support petitioner's theory that black males were

23

chasing the victim through the parking lot before the shooting.  As previously discussed, Corn implicated the petitioner and did not testify at all to the existence of black males. Hammonds also implicated no one but petitioner, testifying that she saw no black males and had heard only a rumor of the existence of black males, which was contrary to her own observations.  Trial Tape 2, January 27, 1998, 16:41:40 through 16:46:00.

The trial court had the opportunity to observe both petitioner and counsel at the August 6, 2001 hearing and obviously gave credence to counsel's testimony that he and petitioner had agreed on the focus of the defense.   Reviewing the record as a whole, I conclude that the state court's findings are entitled to deference.  Counsel was well aware of the witness statements, as well as the lack of any corroborating evidence concerning the mystery black man or men who petitioner testified may have shot the victim.  In other words, there was very little to investigate as this court agrees with the Kentucky Court of Appeals that there was "simply [no] persuasive" evidence available either at the time of trial or even submitted by petitioner at this time.  DE #15, App. at 183.

### 3.  Failure to Interview Witnesses

In a closely related claim, petitioner contends that counsel erred by failing to interview potential witnesses concerning the involvement of the mysterious "Wes" and/or other black men allegedly involved.  Petitioner also argues that additional witness interviews could have provided information to impeach Cynthia Anderson's testimony, and prevented the admission of a damaging statement before the jury.

The Kentucky Court of Appeals rejected this claim on the following grounds:

Our thorough examination of the record reveals that these contentions are
without merit.  For the reasons discussed above, we do not find that
counsel was ineffective when he chose not to interview witnesses or

24

otherwise investigate the alleged involvement of an unknown black man or other black men whom appellant alleged chased the victim. Appellant has failed to establish convincingly or otherwise persuade us that counsel's performance was deficient or that any errors caused counsel to be so ineffective that defeat was snatched from the hands of probable victory. His arguments are conclusory, unsupported by any evidence, and hence unpersuasive. It may have been prudent for counsel to thoroughly interview all potential witnesses and in some way memorialize their statements, but "a reasonable investigation is not an investigation that the *best* criminal defense lawyer in the world, blessed not only with *unlimited time and resources, but also with the benefit of hindsight* would conduct." *Foley*, 17 S.W.3d at 885.

Petitioner specifically criticizes counsel's failure to interview Carol Carrier prior to trial, as well as counsel's reference in his opening statement to Ms. Carrier's anticipated testimony that the victim implicated petitioner as the shooter in his dying breath. However, Ms. Carrier had been interviewed by police three times prior to trial and defense counsel had access to those statements. Those statements, as well as Ms. Carrier's trial testimony, supported the statement made by defense counsel in opening. *See* Trial Tape 2, January 27, 1998, at 12:03:30. There was no indication prior to trial that Ms. Carrier would have anything beneficial to say in support of petitioner's defense and petitioner offers nothing in his current petition to support his conclusory assertion that additional pretrial investigation of Ms. Carrier would have benefitted petitioner or had any impact on the outcome of trial. Based on an objectively reasonable standard, the attorney's decision not to pursue an interview with Ms. Carrier prior to trial was not error.

The same conclusion obtains concerning the other witnesses whom petitioner claims counsel should have, but failed to interview prior to trial. As previously discussed, Hayley Hammonds offered no testimony favorable to petitioner, and petitioner does not state what favorable testimony she might have provided through additional

pretrial preparation.  The same is true of Julie Corn and Danny Ransdell.  *See* Ransdell, Trial Tape 2, 1-27-98: 11:17:00 et seq.

With respect to witness Starla Huff, petitioner claims that his attorney appeared surprised when Huff testified at trial that a black man named "Wes" was in Carrier's apartment some time prior to the shooting.  That fact was minimally corroborating of petitioner's defense; however, the fact was obviously presented to the jury through Huff, the bulk of whose testimony was extremely adverse to petitioner.  It is unclear how counsel's pretrial knowledge of Ms. Huff's fleeting reference to "Wes" could have aided petitioner in any significant way.

Petitioner also claims that his attorney failed to interview witness Cynthia Anderson or witness Cleo Waford (petitioner's brother) prior to trial.  Defense counsel testified at the RCr 11.42 hearing that he had in fact interviewed both witnesses, notwithstanding an affidavit submitted by Cleo Waford denying that he had been interviewed.   The trial court apparently found defense counsel credible.  Nevertheless, it is unclear whether it would have been constitutional error even if counsel had failed to interview Cleo Waford, since that witness offered no testimony favorable to petitioner.

At trial, Ms. Anderson offered damaging testimony on cross-examination that she did in fact see something like a gun in petitioner's hand.  However, defense counsel testified at the RCr 11.42 hearing that he had in fact interviewed Ms. Anderson, but that she had responded differently to his question then.  Defense counsel testified that he chose not to impeach Ms. Anderson directly on the issue by asking follow-up questions at trial because he did not want to draw further attention to the damaging testimony.  Nevertheless, counsel effectively impeached  Ms. Anderson indirectly, by pointing out

26

during cross-examination of detective Johnson that Ms. Anderson had never said

anything about seeing a gun in the statement she gave to police shortly after the shooting.

Counsel's decision not to impeach Ms. Anderson by additional direct questioning was a

matter of legitimate trial strategy, and was not unreasonable.

### 4. Failure to Present Mitigating Witness

Petitioner argues that counsel's failure to present any mitigating evidence was

also error of a constitutional magnitude.  At the hearing on petitioner's RCr 11.42

motion, counsel testified, "In fact, we never discussed possible sentencing.  I think he

was so convinced he would be acquitted. . .."  Tape of 6/12/98 hearing.  As explained by

the Kentucky Court of Appeals:

> The circuit court, in its order denying Appellant's RCr 11.42 motion, did
> not record any determination it made as to whether trial counsel conducted
> any investigation for mitigating evidence.  Upon review of the record, it
> appears that a reasonable decision was made not to investigate, satisfying
> *Strickland*.  Counsel decided to abandon any investigation for mitigation
> evidence because appellant was resolute in his devotion to pursuing
> acquittal and counsel reasonably determined, we believe, that the search
> for mitigating evidence would be futile.

DE #15, App. at 186.

Petitioner argues that in light of trial counsel's testimony that he never even

discussed sentencing, counsel's failure to consider or investigate mitigating evidence

cannot be deemed to have been reasonable.   Although counsel also testified that no one

came forth to offer to testify as a character witness, petitioner argues that he should not

have been expected to supply names of mitigating witnesses when his attorney never

discussed the matter.

Petitioner argues that the court should apply a presumption of prejudice where his attorney so utterly failed in his duty to investigate the possibility of mitigating evidence. I disagree. Under *Strickland*, the burden remains with the petitioner to show prejudice. Even assuming that counsel should have discussed the matter with petitioner prior to sentencing, petitioner has failed to carry his burden to show that he was harmed by the alleged error. In fact, petitioner has failed to submit any affidavits or other evidence that *any* mitigating factors existed but were overlooked by counsel. Petitioner's trial counsel testified to his belief that it was unlikely that mitigating evidence would have made a significant difference in the sentence, in light of the petitioner's significant criminal record.

At the state court hearing on petitioner's RCr 11.42 motion, petitioner presented three "character" witnesses; however, none of those witnesses offered any persuasive mitigating evidence. In fact, none of the three witnesses appeared to know petitioner all that well. For example, one witness, Jack Smith, testified that he had lost contact with the petitioner a year prior to the shooting and did not see him often. *See, e.g.,* Tape, at 10:45:00 *et seq.* None of the three "mitigation" witnesses were aware of the circumstances of the case, of petitioner's criminal record, or of his involvement with drugs or gun ownership. Under *Strickland*, a petitioner must show a reasonable probability that the outcome of the proceeding (sentencing) would have been different.

The Kentucky Court of Appeals reasoned:

> Even if we held counsel's performance deficient, Appellant still must show that "but for" these errors, the outcome would have been different. . .. No showing has been made. The "mitigating" testimony proffered by Appellant would not be sufficient to overcome the impact of his seven prior felony convictions. There is no reasonable possibility that the

28

> introduction of the mitigating evidence now proffered by Appellant . . .would have induced the jury to impose a lesser sentence.

DE #15, App. at 186.  The state court's rejection of petitioner's claim is not unreasonable and should not be disturbed.

### 5.  Failure to Oppose Hearsay Testimony by Cleo Waford

Petitioner argues that his counsel was ineffective for failing to object to damaging testimony by Cleo Waford.  The Kentucky Court of Appeals denied this claim on the basis that the alleged error did not satisfy either *Strickland* prong.  First, while recognizing that counsel's failure to object may have reflected a mistake in judgment, the Kentucky court held that there was no constitutional error:

> Cleo Waford (Appellant's brother) testified that Helen Hale (Appellant's sister) called him after the shooting and stated, "Somebody shot Wilbur, I think Billy did it."  Brief of Appellant, p. 17.  Appellant's position is untenable.  We are not persuaded that he "was deprived of some substantial right which would justify the extraordinary relief" requested. *Foley,* 17 S.W.3d at 884 (citation omitted).

> In light of the "strong presumption" language of *Strickland,* counsel's failure to object was not unreasonable.  Counsel was concerned that excessive objections would irritate the jury and believed that he could discredit Cleo Waford's testimony during cross-examination of the original speaker, Helen Hale.  While counsel may have misjudged the situation, we are unable to say that his performance was deficient.  "A defendant is not guaranteed errorless counsel, or counsel adjudged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."  *McQueen v. Commonwealth, Ky.*, 949 S.W.2d 70, 71 (1997)(citations omitted).  "It is not the function of this Court to usurp or second guess counsel's trial strategy."  *Baze v. Commonwealth*, Ky., 23 S.W.3d 619, 624 (2000).  In this regard counsel's performance was not deficient.

DE #15, App. at 186-187.  The Kentucky court also held that - even if error - counsel's failure to object had no bearing on the outcome of the trial.

Moreover, the exclusion of this evidence would not render a different outcome a reasonable possibility.  Counsel, in his cross-examination of Hale, elicited testimony casting doubt upon the credibility of the statement now in issue.  In view of the Commonwealth's other strong evidence establishing Appellant's guilt, we cannot say that the testimony in question contributed to the jury's finding of guilty and certainly was not so prejudicial as to undermine confidence in the result of the trial or to snatch "defeat from the hands of probable victory."  *Haight*, 41 S.W.3d at 441 (citation omitted).

*Id.* at 187-188.

Petitioner argues that the Kentucky court's conclusion that trial counsel elicited testimony from Hale that cast doubt upon the credibility of the statement should not be accorded deference, given the actual testimony of Hale that she was so highly intoxicated she couldn't recall whether she had made the statement.  Petitioner argues that the hearsay statement by Cleo Waford was especially important because it corroborated the testimony of the only eyewitness, Starla Huff, whose testimony was otherwise impeached by her earlier Grand Jury testimony, her drug addiction, and suspect motives for testifying.  Without Cleo Waford's corroborative hearsay statement, petitioner argues that there is a reasonable probability that the jury would have disregarded Huff's critical testimony and found him not guilty.

Petitioner's argument strains credulity as it would require this court to disregard the veritable mountain of strong circumstantial evidence against him.  Because the Kentucky court's analysis is not unreasonable, it is entitled to deference.

### 6.  Allowance of the Continuance

Petitioner contends that trial counsel committed additional error when he "permitted" the prosecution to obtain a two week continuance.  As noted by the Commonwealth, petitioner's trial counsel actually objected to the continuance; therefore,

counsel cannot be faulted for "permitting" the continuance.  The trial court initially ruled against the Commonwealth's motion, but subsequently granted the continuance after learning that petitioner's counsel still needed to issue trial subpoenas.   Petitioner argues that the Commonwealth clearly gained a tactical advantage because had trial commenced on the date originally scheduled, the Commonwealth would have been unprepared to present critical prosecution witnesses.

Petitioner's argument falls far short of the showing of prejudice required under *Strickland*.  Petitioner does not specifically identify any prosecution witness who would have been unavailable on the original trial date.  The fact remains that the decision to grant the continuance was made by the trial court, as a legitimate exercise of the court's discretion, over counsel's objection.

Even if somehow defense counsel's actions could be interpreted as error - an interpretation neither the Kentucky court nor this court is willing to make - the error could not have seriously prejudiced petitioner and therefore did not violate *Strickland.*

> Regardless of any alleged deficiency in performance by counsel,
> Appellant's assertion that the commonwealth received a "tactical
> windfall" as a result of the continuance is completely unsupported by facts
> or law.

DE #15, App. at 189.  The Kentucky court's reasoning on this issue is sound and entitled to deference.

### 7.  Cumulative Errors

Petitioner's "cumulative errors" argument requires little discussion.  As demonstrated above, the state court's findings and legal conclusions are entitled to

deference on each of the alleged errors of counsel. Therefore, the alleged "cumulative errors" of counsel do not entitle petitioner to habeas relief.

### III. CONCLUSION

In conclusion, none of the claims presented by the petitioner support the post-conviction relief he seeks. Therefore, IT IS RECOMMENDED that the respondent's motion to dismiss [DE #15-1] be DENIED but that respondent's alternative motion for summary judgment [DE #15-2] be GRANTED. IT IS FURTHER RECOMMENDED THAT the petition for writ of habeas corpus [DE #1] be DENIED and that this case be dismissed and stricken from the docket.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v Arn*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). A Party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

This 27th day of June, 2005.



Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge